The opinion of the court was pronounced by
Slidell, J.
This is a petitory action, brought in the year 1841, for the recovery of certain slaves and their increase, and damages for their wrongful detention. The defendant claims under a judicial sale made in 1840, to satisfy a mortgage of the slaves granted by F. N. Waddell in 1837.
It appears from the evidence in the cause, that the plaintiff is a native and resident of North Carolina, and that the slaves, previous to their importation into this State, were employed on an estate of the plaintiff in North Carolina, under the supervision of F. N. Waddell, her connexion and agent. In the year 1835, he, with her consent, brought these slaves and others belonging toiler brother, to Louisiana, under an agreement that they should be worked for their benefit. It does not distinctly appear whether the plaintiff was to receive specific wages for them, or be remunerated for their services by a share of the proceeds of their labors. But it is unquestionable, that Waddell was clothed with no higher control than that either of a lessee or an agent; and that as between the parties the ownership was not intended to pass, and never did pass. The conduct of Waddell in mortgaging the slaves in his own name, and for his own benefit, and thus attempting to create an incumbrance, which subsequently resulted in the judicial safe, under which Lambeth holds, was utterly unauthorized, and a gross fraud upon the plaintiff.
The question then presented in this cause is, upon whom are the consequences of this fraud to fall ? Upon the plaintiff, whose confidence and rights have been violated, or upon the defendant, who claims to be a bond fide purchaser, for a valuable consideration ? "
Before entering upon the consideration of this question, it is necessary to state some further facts upon which the defendant relies in support of his title.
When Waddell came with the slaves to Louisiana, in 1835, he established himself upon lands belonging to his relation, John Waddell, and cultivated it by their labor. He sold the crops in his own name. The slaves appear upon the assessment roll of 1840 in his name. The control which he appeared to exercise over them, was that of an ordinary owner. Two witnesses, residing in the parish, seem to have entertained the impression that Waddell was not the owner; but others state their entire ignorance of any outstanding title, and it was admitted at the trial, that many witnesses of the parish could be produced, who would swear, that they never knew of Sarah Moore having giveu any notice of her claim to the slaves. The mortgage was given by F. N. Waddell, in 1837, to John Waddell, his relative, who knew the plaintiff’s title;but the mortgage notes passed into the hands of parties who are not proved to have been cognizant of the fraud, and whose good faith is claimed as enuring to Lambeth’s benefit.
It is unquestionably true, as the general rule, that no man can be divested of his property without his own consent; and, consequently, that even the honest purchaser under a defective title, cannot hold against the true'proprietor. Nemo plus juris in alium transferre protest quam ipse habet.
*73 To this general rule there are undoubtedly exceptions. A vendor who has consented to a transfer of his property, under circumstances of fraud, has not, in legal contemplation consented to part with it, and might recover it from his vendee. But if it had passed ioto the hands of an honest purchaser, he would hold by a better title than the first vendee, and would be protected against the secret equity. So also in some of the transactions of commerce, an owner may be estopped from reclaiming his property from a subsequent bond fide purchaser, by having voluntarily placed in the hands of another the indicia of ownership, or exhibited him to the world as a person having power to dispose of it; and however certain his intentions not to part with his ownership, he would not be heard against an honest purchaser, who had acted upon the confidence thus imprudently reposed. Such are the cases of a bona fide holder of a bill of lading, received from a fraudulent consignee, who abuses the confidence of his consignor; or the bond fide purchaser of goods from the dishonest factor, whose common business it was to sell goods of that character, and to whom the owner had entrusted them under instructions which were disobeyed.
But, after a careful consideration of this subject, we have not met with any authority which would justify us in taking the present case out of the general rule, which throws upon the transferree the hazard of his author’s title, and requires the consent of the owner to the divestiture of his rights.
The case of Barfield v. Hewlett, 4 L. R. 120, is stpongly analogous to the present. There the plaintiff proved his title ; and it was admitted that the defendant purchased the slaves at auction, and took Harraldson's bill of sale. The slaves had been delivered by the plaintiff to Harraldson, under a written agreement Ihat he should bring them to Louisiana and hire them for the plaintiff, till the arrival of the latter in Attakapas, or Opelousas. Harraldson brought them to New Orleans, where he publicly offered them for sale, and finally put them up at auction. It is clear, said the court, that the defendant acquired no title; his vendor having none himself, nor any authority to convey any.
In McBurney v. Flagg, 11 L. R. 333, the case was thus : Youngblood came into possession of some slaves in South Carolina, under an agreement made in 1839, with the owner, McBurney, to sell him the slaves conditionally at a stipulated price on credit with interest. It was agreed that Youngblood should take possession of the slaves, and might remove them out of the State. But it was expressly stipulated that the property of the slaves and their issue, should abide in McBurney; that Youngblood should not become owner of them, nor they be liable to his contracts, until he should have paid the stipulated sums. He came with the slaves to Louisiana, and in 1830 mortgaged them to Flagg. Upon his failure to pay the mortgage debt, Flagg obtained an order of seizure and sale, when McBurney brought suit and claimed them as owner. Flagg answered by a general denial, and further averred, as the defendant has done in this case, that the petitioner suffered McBurney to introduce the slaves into this State, and thereby enabled him to obtain credit in fraud of third persons, by reason of which the property became liable for his debts. The plaintiff had judgment as owner; and upon appeal it was affirmed.
In Russell v. Favier, 18 L. R. 587, the plaintiff brought a petitory action for a slave. He had brought the slave from Virginia to Mississippi, in 1836, with a number of others, for the purpose of hiring them out. The slaves were hired out at the commencement of each year, and the plaintiff annually visited *74 the State for the purpose of receiving their hire. He had an agent in Vicksburg who attended to his business in his absence. In January, 1838, the slave was hired to one Bucner, who, in April following, took her to Natchez, and after offering her for sale privately, at different times, finally had her sold at auction, when Veill became the purchaser, brought her to New Orleans, and sold her to the defendant, who had no notice of the fraud. The plaintiff’s claim was sustained, upon the ground that Russell had no intention of passing the right of property to Bucner, but only hired the slave to him ; that he only intended to give a temporary possession, and that the subsequent fraud of the lessee could not deprive the owner of his right of property.
In Brown v. Glathey, 4 Ann. 124, the plaintiff had hired a slave in Kentucky, to Craig, with the understanding that he might take the slave as a domestic servant to Louisiana, whither he was-going for a temporary purpose, and bring her back on his return. Craig fell in debt in Louisiana, and the slave was seized under attachment by his creditors. It was held that the owner did not lose his right in favor of the lessee’s creditors, although the lessee’s possession and his declarations- might have induced them to trust him.
The only case in our reports cited by counsel, which seems to militate against those above referred to, is that of Jenkins v. Thenet, 9 Rob'. 35. In that case it was decided, that a purchaser from a person who came into possession of slaves in Maryland, as administrator of the deceased owner, fraudulently sold them here as his own, and converted the proceeds to his own use, could not hold them against the succession of the deceased, the buyer having notice of the fraud at the time of his purchase. It is true, that the court then used the following language : “ Slaves being thus regarded as chattels' in Maryland, and having been brought into this State, and possessed for many years by one of our own citizens, he must be presumed to be the true owner, and, consequently, a bond fide purchaser from him, without notice of the title of the estate of Alexander Lea Fenwick, ought to be protected,” &c. But, these remarks may be deemed obiter dictum, the cognizance of the fraud by the purchaser being an ample basis for the decree rendered.
It has been attempted to sustain the defence here upon the ground of an equitable estoppel, under the doctrine so familiar to courts of equity in our sister States, and which has been frequently recognized in our own jurisprudence, that where one man who has a title, and knows of it, stands by and either encourages, or does not forbid the purchase, he shall be bound by it. It is argued, that the plaintiff’s case falls within the rule, because she permitted the slaves to go into Waddell’s possession to be brought to this State, and remain here in his apparent control as owner during five years, without publishing her title to the world, although complaining meanwhile that he made her no remittances. But, it must be observed, that she never gave him possession as owner; that she was distant from the scene of fraud, and had no knowledge either of the mortgage, or of the resulting judicial sale under which the defendant claims, until a short time before she brought this suit; all which has been clearly proved. It cannot be said, under these circumstances, that she has stood by, has been silent when she should have spoken, and is therefore estopped in good conscience, from revendicating the property of which she has been despoiled.
With regal’d to the testimony in this cause, objections of form have been discussed by the defendant’s counsel, which we consider unavailing: the party *75 having, in our opinion, concluded himself by the agreement under which the cause was re-opened after the first trial. After a careful consideration of the evidence, we are entirely satisfied as to the plaintiff’s ownership.
Being of opinion that the judgment of the court below is correct, we have deemed it unnecessary to consider the plaintiff's motion for the dismissal of the appeal.
The judgment of the district'court is therefore affirmed, with costs.
Eustis, C. J. I assent to the correctness of the judgment of the district court; but my reasons are other than those expressed in the opinion of the court.